## J. W. G. D. HENDERSON v. THE STATE.

Where the Statute punished any person who should " pass or use, as true, any "such counterfeited or altered writing, mentioned in the preceding Section, "knowing the same to be such, with intent that any person shall be defrauded," it was held that a count which omitted the words " knowing the same to be such," was bad, although the passing was alleged to have been done feloniously and falsely.

Where the Clerk of the County Court, on the trial of an indictment for forging a deed, testified that the defendant had handed him for record, a deed of which the Clerk produced a copy, taken from the record of the registration of said deed, and that after the same had been recorded, defendant paid for the registration thereof, whereupon he returned the same to the defendant; notice having been given to the defendant to produce the original, and he having failed to do so, it was held that the copy was properly admitted as secondary evidence of the contents of the original.

See this case as to the length of notice necessary to the defendant in a criminal case, to produce papers ; and as to the exceptions to the rule which requires such notice.

See this case as to circumstantial evidence, in cases of forgery.

Where the defendant was indicted for forging a deed, and the State, having failed to obtain the deed, which was traced to the possession of the defendant, relied on proof of the death of the nominal grantor before the date of the deed, and it was proved that six or eight years before the trial, the nominal grantor resided in Galveston, where he had a family, he being about sixty years of age ; that at about that time, a general rumor prevailed in said city, that he had then recently died in the city of New Orleans ; that the same was published in the newspapers ; that his family went into mourning ; and that an obituary notice of his death was published in New Orleans at the time, where a rumor to the same effect also prevailed ; it was held that said testimony was competent, and sufficient to warrant the jury in finding that the nominal grantor was dead at the date of the deed, it being dated within twelve months before the trial.

The fact of forgery, itself, will be sufficient to imply an intention to defraud ; or, at least, it will be sufficient, if from the circumstances of the case, the jury can fairly infer that it was the intention of the party to utter the forged instrument ; and, *a fortiori*, if, as in this case, there is proof that he did utter it. (Put it on record ; being a deed for land.)

It is well settled, it is true, that the forging of an instrument which, on its face, is void, is not indictable. But where a forged deed for land is valid on its face, it is indictable, although the reputed grantor be dead ; nor is it necessary to prove that such reputed grantor had title or claim to the land.

Where a forged deed, purported to be made in the county of Harris, representing the grantor as a resident of Galveston, and the grantee, (the party charged with the forgery,) as residing in the county of Milam, and there was no evidence of the residence of the accused elsewhere, than as described in the deed, and no

other evidence of the making of the deed in the county of Anderson, where the venue was laid, than the uttering of the deed or having it recorded in that county, it was held that the evidence was not sufficient to authorize the jury to find that the forgery was committed in Anderson county.

Appeal from Anderson. Indictment for forging and counterfeiting a deed in the name of John Price, to several tracts of land, one of which lay in Anderson County. The deed was set out in the indictment. It purported to have been made in the County of Harris, and to be dated June 5th, 1854, from said Price to the defendant, reciting the residence of Price at Galveston, and that of the defendant in Milam county ; and witnessed by two witnesses.

The indictment contained a second count, which was quashed on motion of the defendant. Said count was as follows : " that the said James W. G. D. Henderson, on the day and year afore- " said, in the county aforesaid, feloniously and falsely did pass "and use as true, a certain false, forged and counterfeit deed, "which said false, forged, and counterfeit deed is as follows, "that is to say. (Here the deed was copied.) With intent to " defraud, contrary to the form of the Statute," &c.

The indictment was presented March 27th, 1855. On the same day the defendant was served with notice to produce the original deed. The trial was on the 30th of same month. The Term of the Court had commenced on the 19th. The defendant not producing said deed, the State was permitted to prove by Vaughan, the Clerk of the County Court of Anderson County, that defendant filed with him for record a certain deed of which the following is a certified copy taken from the record of the registration of said deed ; that is to say : (Here copy, same as in indictment, with the notarial certificate added. The copy was certified by Vaughan, the witness.) To the introduction of said copy deed, as evidence, the defendant objected, but the objection was overruled and the State was permitted to read the copy without the notarial certificate, which was excluded, to which ruling the defendant excepted. The State also proved by said Vaughan, that the defendant filed with him

for record, a deed of which the above is a copy, and that said original deed had the notarial certificate thereupon, of which the foregoing is a true copy ; but the Court still refused to allow said copy of said notarial seal to be read. The notarial certificate was of the acknowledgment of the deed by the grantor, in Montgomery county, September 13th, 1854. Said Vaughan also proved that the defendant made a satisfactory arrangement with him for the payment for the registration of said original deed and the said notarial certificate, whereupon he returned the same to the defendant and has not since seen said deed or certificate ; that this occurred during the Fall of last year. Vaughan also testified that a portion of the body of said original deed, to wit : the words "fee simple," was in the hand writing · of the defendant, but he could not state that the signature, John Price, was in the defendant's hand-writing. There was no proof from any one, that said deed had since been seen in or out of defendant's possession.

The State next introduced three witnesses, to wit : Scott, Menard and Doswell, who testified that one John Price, some years ago, resided in the city of Galveston, Texas ; that witnesses, about six or eight years since, were acquainted in the said city and with the wife and children of said John Price, who was then about sixty years of age ; that at the time aforesaid (six or eight years ago) a general rumor prevailed in said city of Galveston, that the said John Price had then recently died in the city of New Orleans, in the State of Louisiana ; that said rumor was also published in the newspapers, and acted on as true by the family of said supposed deceased, who went into mourning. Scott also testified that he then lived in New Orleans ; that he there saw an obituary notice of the death of said John Price ; and that a rumor prevailed to that effect. To each divisible portion of said testimony, defendant excepted separately, but the exceptions were severally overruled.

On cross-examination of said Menard, he stated that said John Price (supposed to have died) left a son called John Price,

now some thirty years of age, whom he frequently saw in Galveston and in Texas, before and after the rumored death of his father. Said Doswell also testified, when interrogated by the State, that the permanent residence and business place of the said younger John Price, was, before and at the time of his father's rumored death, at said city of New Orleans, where, in commercial transactions, he usually signed his name at that time, John Price, Jr.; but he does not know how he signed it subsequently to his father's death; that since the reported death of the elder John Price, the younger John Price has frequently been in Texas, and about Galveston, where his mother and sisters continued to reside and still reside, the same having been the domicil of said elder John Price, at the time of his reported death. There was no proof of the death of *the* John Price, except as above stated.

Here the State closed its testimony.

The defendant offered in evidence the certified copy of the notarial certificate to the deed, which had been excluded in taking the evidence for the prosecution, and in connection therewith offered a witness to prove that the notary who purported to give said certificate, was a real person and a resident of Montgomery county. This evidence was rejected and the defendant excepted.

The above was all the evidence in the case.

In the view of the case taken by this Court, the instructions given and refused are not material. Verdict of guilty. Judgment accordingly. Motion for new trial overruled. Appeal, &c.

*F. W. Bowdon*, for appellant. 1. The copy deed offered in evidence was but the copy of a copy, and not being an examined copy, was inadmissible. The original should have been produced, or if it could not be, then the next best evidence should have been resorted to. (1 Starkie Ev. 192 and 193; United States v. Britton, 2 Mason, 468.)

2. The notice to the defendant to produce the original, being

given only two days before the trial, and there being no proof that it was in his possession at that time, and none that it was destroyed, the secondary evidence relied on was not competent. (Rex v. Haworth, 19 Eng. Com. Law R. 502 ; 4 Carr. & Payne, 255.)

3. The notarial certificate being, as was shown, on the original deed, and registered with it and being connected with the copy deed read in evidence by the State, should have gone to the jury, in connection therewith, the State having no right to read a part of the deed and suppress the balance. (6 Tex. R. 74.)

4. In criminal cases it is not competent to prove the death of an individual by rumor, and especially where such death is alone relied on to prove the offence, or main issue.

The death of Price, constituting the sole evidence of the forgery in this case, should have been proved by evidence as conclusive as would be required to make out the main fact of forgery, for which hear-say or rumor would be wholly incompetent.

In such case the presumption of innocence is stronger than the presumption of guilt arising from such proof. A Court should not let in proof, and then charge away its whole effect, as it would in that case be useless, if the jury regarded the charge, and hurtful and unjust to the accused, if they did not.

This is the principle to be extracted from the adjudicated cases, where hearsay or rumor is relied on to establish crime, though the rule is different in a certain class of civil cases. This principle is universally conceded in cases of homicide and bigamy, and is equally applicable in this case, the two former cases not forming exceptions to, but illustrations of the rule. (4 Burr. R. 2058–9 ; 1 Tex. R. 532 ; 3 Tex. R. 449 ; Com. v. Webster, 5 Cush. 317 ; Best on Presumptions, 47 vol. Law Lib. 54–5, top p. and also top p. 161–2 ; 18 Johns. R. 37 ; 15 Mass. R. 163.)

5. The registration of the deed in the county of Anderson, by defendant is not sufficient proof, is in law no proof, that it

was made there, as he is not shown to have resided in that county, when it bears date; and especially as the deed, on its face, purports to have been made in the county of Harris, and states the residence of the defendant to have then been in the county of Milam. The Common law required offences to be prosecuted in the county of their commission, and this is specially provided for under the Statutes of Texas. (Hart. Dig. Art. 667; 1 Chit. Crim. Law, 190; 3 Chit. 1039; Com. v. Parmenter, 5 Pick. 279; 3 Greenl. Ev. p. 105; 2 Russ. on Crimes, 390.)

Where a forged deed is found in the possession of a party, in the county where he is indicted, for the first time, and does not, on its face, purport to have been made elsewhere, and the date corresponds with the time the party is found to have been in that county, it may be inferred that it was there made. This is the principle of the case in 2 Mason, 464, where the draft was drawn in Philadelphia and altered afterwards. That case is not in conflict with the authorities before cited, and is not so treated in any of them; nor does Judge Story dissent from the principle of the English cases, which are endorsed as correct, in the case in 5 Pick. and also by Greenleaf. In England, at this time, a prosecution may be instituted in any county where a forged paper is uttered, by the Statute of William IV; but the old Common Law rule prevailed, till the passage of the Statute.

6. A new trial should have been granted, the proof being wholly insufficient to justify a conviction, for several reasons, and among them are these:

1. The identity of John Price is not proved; and having lived in a large city, his name merely does not identify him, he having a son of the same name. Junior is no part of a man's name. (2 Greenl. Sec. 278, a; 4 Monroe, 527.)

2. John Price being dead and not being shown to have owned the land described in the deed, in his lifetime, could not possibly have been defrauded by the supposed forgery, nor could his estate; and it is not pretended that any one else was

defrauded or sought to be defrauded thereby. (5 Ala. R. 759 ; 1 Denio, 9 ; 9 Cowen, 778–782.)

7. The Statute of the last session of our Legislature was not designed to make any change as to the proof required in a case of forgery, but relates alone to the pleadings or the indictment. (Pamphlet Acts, 62.)

*Attorney General*, for appellee. The deed describes " John Price" as resident in Galveston, and so far its statement is worthy of notice, as it shows what John Price was intended to be personated by the forgery. Now the John Price obviously intended to be represented, had resided with his family for four years in that place, and it was shown on the trial, that he had died "six or eight years" ago. Although this evidence would, not be sufficient in a case of murder, (2 Greenl. Ev. Sec. 278 a, p. 296,) yet where the death is only collaterally involved, even, I apprehend, in a criminal case, this character of proof is clearly sufficient, especially after seven years' absence from his family, friends and country, without a word of information of his being alive, and this in the case of a man 60 years old. (2 Greenl. Ev. Sec. 278 f, p. 299.)

The deed, then, purporting to have been executed by a man long dead before its existence, in favor of appellant, in his possession, claimed and suppressed by him, must be regarded as a forgery, committed by appellant.

The peculiar feature of suppression, by the prisoner, of the forged instrument, and the very question of venue here involved, are fully discussed and correctly adjudicated by Judge Story, in The United States v. Britton, 2 Mason, C. C. R. 364. This case is so clearly in point as to leave me but little more to discuss in the case before the Court.

WHEELER, J. The Court did not err in quashing the second count in the indictment. It omitted to charge that the defendant used the deed " as true," " knowing the same to be " " counterfeited," in the words of the Statute. (Hart. Dig. Art.

1442.) Nor did it use any equivalent words, conveying the charge of having uttered the forged deed with a guilty knowledge. The offence of uttering forged instruments is defined by the Statute, in very plain and intelligible language; and the statutory definition of the offence should have been pursued. It is always proper to describe the offence in the very words of the Statute, where, as in this case, it affords a complete definition. It is safest to adhere strictly to the words in which the Legislature have undertaken to define the offence; for none others can be so appropriate to convey their meaning. And it is never safe to depart from them. It will be certainly fatal to the indictment, if any essential element in the definition of the offence in the Statute be omitted. Here, an essential ingredient in the definition, plainly expressed in the Statute, is wholly omitted. (3 Chit. Cr. Law, 1049, 1039; 3 Greenl. Ev. Sec. 111; 3 Arch. Cr. Pl. 547, 26, 548, *et seq.* and notes.) This count in the indictment was therefore bad; and the State was, consequently, forced to try upon the remaining count, embarrassed by the difficulty of proving the venue as laid; which might have been avoided, had this count been properly framed.

It is now objected to the judgment of conviction, upon the first count, that the Court erred in admitting in evidence the certified copy of the supposed forged deed, because not an examined copy. It was not proposed, primarily, to prove a record, but, by means of the record, the contents of an original paper in the possession of the party. If the rule respecting the proof of records applies, the evidence was that which the law allows for that purpose; and it was not necessary to bring the record into Court, or to produce other evidence than that which was produced. The certified copy, in connection with the testimony of the Clerk, was the best evidence of the contents of the original, which the State could obtain. The testimony of the Clerk who recorded the deed, and who was the keeper of the record, gave the copy introduced all the verity of, and in effect, if not in fact, made it an examined copy. It is well settled, in trials for forgery, as well as in other cases,

that if the original forged paper is lost, or destroyed, or in possession of the party, who refuses to produce it, secondary evidence of its contents may be received. (3 Arch. Cr. Pl. 555, n. 1, 6 ed.) The next best evidence which the nature of the case admits of, and which it is in the power of the party to produce, will be admitted. (3 Greenl. Ev. Sec. 107 ; 2 Mason, R. 464 ; 3 C. & P. 591.) Such was the evidence produced in this case, and there was no error in its admission.

But it is objected that the notice to the defendant to produce the original, was not given a sufficient length of time before the trial ; and upon this point there may be reason to hesitate. The notice was not given until several days after the commencement of the Term of the Court, and but two or three days before the trial. Where, upon an indictment for forging a deed, it was proposed to give secondary evidence of it, upon the ground that it was in possession of the prisoner, and he had notice to produce it, but it appearing that the Assizes had commenced before the notice was given, the Court held that it was not sufficient, and that it ought to have been given a reasonable time before the Assizes. (4 Carr & P. 254 ; 3 Greenl. Ev. Sec. 107 ; 3 Arch. Cr. Pl. 554–1, 555.) If it should appear that the prisoner has destroyed the paper, notice to produce would be unnecessary, for then it would be nugatory. (Id. and How v. Hall, 14 East. 276, n.) If, however, the fact of the destruction of the instrument is not clearly proved, and is denied by the prisoner, notice to produce it will not be dispensed with. (Doe v. Morris, 3 Ad. & El. 46.) There are certain exceptions to the rule, which requires that notice be given to the party to produce the original when it is in his possession, (1 Greenl. Ev. Sec. 561,) but they are not necessary to be here considered. If the indictment had apprised the accused, that the prosecution intended to charge him with the possession of the instrument, it would have brought the case within one of the exceptions to the rule, and notice to produce would not have been necessary. (Ib.) But it did not. He was therefore entitled to notice ; and it may admit of a

question, whether, under the circumstances, the notice was sufficient. (Id. Sec. 562, n.) But our opinion upon another question in the case, supercedes the necessity of a definite and final opinion upon this point.

It is further objected that the evidence admitted was incompetent to prove the death of the person by whom the deed purports to have been made. And it is insisted, that as the conclusion that the deed is a forged deed, rests solely upon that fact, and that is the sole evidence relied on to prove the *corpus delicti*, nothing short of direct and positive evidence is competent to establish the fact.

It is true, that it was essential to prove that the deed was not the deed of the person in whose name it professed to be made. That was the *factum probandum*. And circumstantial evidence was relied on to prove it. And it is also true, that the coincidence of circumstances, tending to indicate guilt, however strong or numerous they may be, avails nothing, unless the *corpus delicti*, the fact that the crime has actually been perpetrated, be first established. But it need not be proved by direct evidence. Thus, even in cases of homicide, the death of the party slain may be proved either by direct evidence of the fact, or by inspection of the body after death; which latter, though conclusive, yet is not direct evidence of the fact of death. But though the *corpus delicti* may be proved by circumstantial evidence, it is also true, that the circumstances, from which the conclusion is drawn, must be fully established by proof. "If the basis be unsound, the superstructure cannot be secure." The party upon whom the burden of proof rests is bound to prove each circumstance which is essential to the conclusion, in the same manner as if the whole issue had rested upon it. (1 Starkie, Ev. 507.) "The circumstances" (in the words of the Supreme Court of Massachusetts, in The Commonwealth v. Webster,) "are facts, from which the main fact "is to be inferred; and they are to be proved by competent "evidence, and by the same weight and force of evidence, as if "each one were itself the main fact in issue. Under this rule,

" every circumstance, relied upon as material, is to be brought " to the test of strict proof. (5 Cushing, R. 317–18.) But this rule does not require that the circumstances, which may consist of a series of dependent facts, should each be proved by direct evidence. If one fact be dependent upon, and a necessary conclusion from another, though the rule requires that the fact on which the conclusion depends, be brought to the test of strict proof, and established by competent evidence, and by the same weight of evidence as if it were itself the conclusion, or *factum probandum*, it does not require more; but the same character aud weight of evidence, which would be sufficient to prove the conclusion or main fact in issue, will be sufficient to establish that from which it results. Thus, if it was admissible, in this case, to prove by circumstantial evidence that the deed was forged; as it will not be denied that it was; so may the fact, from which that conclusion is drawn, and on which it rests, or depends, be proved by circumstantial evidence. And the law demands no higher degree, or greater weight of evidence to prove the latter than the former fact. " The force of a particular inference, drawn from a number of " dependent facts, is not augmented, neither is it diminished, " in respect of the number of such dependent facts, provided " they be established." (1 Stark. Ev. 504.) If John Price was dead at the time of the making of the deed, the conclusion is inevitable, that it was not made by him. The fact that he was dead, if that be the sole basis on which the conclusion rests, must be fully established by competent evidence. But it need not be proved by direct evidence. And here, as elsewhere, the rule applies, that the best evidence which, in the nature of the case, can be obtained, must be received. And the rule is the same in criminal as in civil cases. (1 Greenl. Ev. Sec. 65; Roscoe, Cr. Ev. 73.) Whether it be sufficient, will depend on its adequacy to satisfy an unprejudiced mind, of the truth of the fact, beyond a reasonable doubt. " The cir- " cumstances (it has been justly said) which will amount to this " degree of proof, can never be previously defined; the only

" legal test, of which they are susceptible, is their sufficiency to
" satisfy the mind and conscience of a common man ; and so to
" convince him, that he would venture to act upon that convic-
" tion, in matters of the highest concern and importance to his
" own interest." (1 Greenl. Ev. Sec. 2.) After laying down
certain rules on the subject, Mr. Starkie says: " What cir-
" cumstances will amount to proof can never be matter of gen-
" eral definition ; the legal test is, the sufficiency of the evi-
" dence to satisfy the understanding and conscience of the jury.
" On the one hand, absolute, metaphysical and demonstrative
" certainty, is not essential to proof by circumstances. It is
" sufficient if they produce moral certainty, to the exclusion of
" every reasonable doubt ; even direct and positive testimony
" does not afford grounds of belief of a higher and superior na-
" ture." " On the other hand, a juror ought not to condemn,
" unless the evidence exclude from his mind all reasonable
" doubt of the guilt of the accused, and, as has been well ob-
" served, unless he be so convinced by the evidence, that he
" would venture to act upon that conviction in matters of the
" highest concern and importance to his own interest." (1
Stark. Ev. 514.) The result of the rules of law respecting the
sufficiency of circumstantial evidence, is very well and concise-
ly stated by the reporter, in the case of the Commonwealth v.
Webster, before cited ; thus, " In order to warrant a convic-
" tion of a crime, on circumstantial evidence, each fact, neces-
" sary to the conclusion sought to be established, must be
" proved, by competent evidence, beyond a reasonable doubt ;
" all the facts " (that is the facts necessary to the conclusion)
" must be consistent with each other and with the main fact
" sought to be proved ; and the circumstances, taken together,
" must be of a conclusive nature, leading, on the whole, to a
" satisfactory conclusion, and producing in effect a reasonable
" and moral certainty, that the accused, and no other person,
" committed the offence charged."

As respects the character of the evidence, it must be appar-
ent, that evidence of the character of that which was admitted

in this case, is in general the best, and often, indeed, the only evidence which it will be in the power of the State to obtain, in such cases.   It is a very different case, from that of proving the previous marriage in the case put by counsel.   The living can point to the witnesses of their marriage, but from the grave there is no voice heard to tell where the living witnesses, present when the spirit took its departure, 'may be found.   From the nature of the case, a less degree of evidence should be required in the latter, than the former case.

But it is to be observed, that the conclusion that the deed was forged does not rest, immediately, or solely, upon the assumed hypothesis of the death of the supposed maker.   But proof of his death involves the conclusion of the impossibility of his presence at the time and place of the making of the deed, and the consequent impossibility of his having made it.   But whether dead or absent, the conclusion is equally inevitable, that he did not make the deed; and consequently that it is forged; unless it be shown that it was made by some other person by his authority, or was, in fact, made at a different time and place from that at which it purports to have been made.   And this, if the fact were so, it devolved on the accused· to prove; for, being the grantee, claiming under the deed, at least in so far as to have had it recorded, as against him, it must be taken to afford *prima facie* evidence that it was made when and where it purports to have been made.   To make out a case, therefore, which should amount to proof, *prima facie*, that the deed was forged, it was only necessary for the State to prove, by competent evidence, circumstances having a conclusive tendency and force to establish, either that the person by whom it professed to have been made, was dead; or that he was absent from the place where, and at the time when, the deed purported to have been made.

The impossibility of adducing direct evidence of the fact of the forgery, in consequence of the original being suppressed or withheld by the accused, though not to be taken as evidence, tending in any degree to the proof of the *corpus delicti*, or as

evidence of guilt, is nevertheless a fact, which must be attended with the consequence of excusing the State from adducing direct and positive evidence of the crime. Direct evidence to prove the fact, either of the false making of the instrument, or the circumstances on which that conclusion depends, must be dispensed with in such cases, or society could have no protection against the perpetration of crimes of this character. Forgeries might be perpetrated with impunity, which, upon a man's death, would sweep away his estate, wrest from his widow and children his possessions, and thrust them out, homeless and beggars, from the home so sacred, in the eye of our law, that 'while the owner lives, it is his castle, where none dare intrude, and when he dies, not even his honest creditor, nor any officer or process of the law, no consequence of his own improvidence while living, can wrest from the possession of his widow and children. There is perhaps no crime affecting property, easier of perpetration, or more dangerous in its consequences to society; few, perhaps, of which there is less likelihood that the innocent will be accused; and none where the accusation, if false or unfounded, will admit of a readier or more certain refutation. None of these considerations, of course, can have any influence upon the question of guilt or innocence of the crime, in any given case. Nor can they change the rules of evidence, or warrant a conviction upon less, or a lower grade of evidence than would be required to convict of other crimes. But they may serve to show the propriety and necessity of resorting to circumstantial evidence, where direct evidence of the facts does not exist, or is not within the power of those representing the State; and of admitting the best evidence which, in the nature of the case, it is possible to obtain. Such evidence is permitted by the law to be received, and is allowed to prevail, to the conviction of an offender, not merely because it is necessary and politic that it should be resorted to, but because it is, in its own nature, capable of producing the highest degree of moral certainty, in its application.

We are of opinion, therefore, that the evidence in question

was not obnoxious to the objection urged to its admissibility, or competency; and we are not prepared to say that it was not sufficient *prima facie* proof, that the deed in question was not the deed of John Price, whose deed it professed to be. That conclusion would, doubtless, have been greatly strengthened, as respects the person, by proof that the title to the land, which the deed purported to convey, was in him, if such was the fact. But in respect to the fraudulent intent, necessary to consummate the crime, the evidence was sufficient without such proof; as the Statute does not require proof of an intention to defraud any person in particular. (Act of Feb. 9th, 1854, Sec. 23; 3 Arch. Cr. Pl. 546, 550, n. (1) 6 ed.; 3 Greenl. Ev. Sec. 103.) The intent to defraud, it is true, is of the essence of the crime. But it is not essential that any person be actually defrauded; or that any act be done towards the attainment of the fruits of the crime, other than the making of the instrument. And the very fact of the forgery itself, will be sufficient to imply an intention to defraud; or at least, it will be sufficient, if, from the circumstances of the case, the jury can fairly infer that it was the intention of the party to utter the forged instrument; (3 Greenl. Ev. Sec. 103; 3 Arch. Cr. Pl. 546; 2 Russ. on Cr. 361, 7th Am. from 3rd London ed.;) and, *a fortiori*, if, as in this case, there is proof that he did utter it. It is well settled, it is true, as held in a case cited by counsel, (The People v. Shall, 9 Cow. R. 778,) that the forging of an instrument which, on its face, is void, is not indictable. But that is not this case. The deed, on its face, appears to be a valid, legal conveyance of land. And it is sufficient, that it is such a character of instrument, as that, the consequences of the forgery would necessarily or possibly be to defraud some person. It is sufficient if it appear that by possibility, either the State, or some person, might be defrauded. (Act above cited; 3 Greenl. Sec. 103; 2 Russ. on Cr. 361, n.; 2 New. Jer. 212.)

It remains to consider an objection to the judgment, founded on a rule of the Common Law, which, though merely technical, and abrogated by Statute in England, and probably in most of

our sister States, (in its application to this and many other offences,) has, here, the force of legislative affirmation ; that is, that the accused must be prosecuted in the county where the crime was committed. (Hart. Dig. Art. 667 ; 3 Chit. Cr. Law, 1039, b ; 1 Arch. Cr. Pl. 71.) It is insisted that it does not appear by the evidence, that the deed was made in the county where the party was indicted ; and where it is alleged to have been made, in the indictment.

- It has been held that if the instrument is not dated at any place, and the fact of forgery by the prisoner is proved, and that he uttered or attempted to utter it at the place named in the indictment, this is evidence that it was forged at that place. (Bland v. The People, 3 Scam. 364.) And it is well settled that, if the instrument bears date at a certain place, and it is proved that the accused was there at that time, this is sufficient evidence that it was made at that place. But where a forged instrument was found in the prisoner's possession at W., where he then resided, but it bore date at S., at a previous time, when he dwelt in that place, this was held not to be sufficient evidence of the commission of the offence at W. (3 Greenl. Ev. Sec. 112 ; 1 Chit. Cr. Law, 160 ; 3 Id. 1039, b.) And in the case of the Commonwealth v. Parmenter, (5 Pick. R. 279,) it was held to be " clear, from authority, the of" fence of forging in the county," (the note bearing date at a different place,) " cannot be inferred from the fact of uttering " and publishing in the county." And the verdict was set aside, on account of the defect of proof, in this particular, (and see Russ. on Cr. 390.) These authorities are decisive of the present question. The deed purports to have been made in the county of Harris, representing the grantor as a resident of Galveston, and the grantee, the party charged with the forgery, as residing in the county of Milam ; and there was no evidence of the residence of the accused elsewhere than as described in the deed ; and no other evidence of the making of the deed in the county of Anderson, where the venue is laid, than the uttering of the deed, or having it recorded in that

county. It is clear, therefore, upon the authorities cited, that the evidence was not sufficient to warrant a conviction of the offence of forgery, or making the deed, in the county where the venue was laid. If the indictment had been for the uttering, instead of the making of the deed, it would have been otherwise; for it cannot be doubted that the recording of the deed by the grantee, was evidence sufficient of the uttering, or, in the language of the Statute, using the deed as true, though not evidence of the forging.

We are referred by the Attorney General, to the case of the United States v. Britton, (2 Mason, 464,) which is relied on as an authority to support the conviction in this case. But it will be evident, by a mere statement of the case, that it cannot be successfully invoked for that purpose. A check was drawn in Philadelphia on Boston, in favor of the prisoner, who was then in Philadelphia, and who afterwards produced the check, altered, in Boston, and there being no evidence that it was altered elsewhere, it was held *prima facie* evidence that it was altered in Massachusetts, that being the first place where it was known to be altered. The question was not as to the place of making, but of the alteration of the note; and there was nothing on the face of the note or extrinsic, showing or purporting that the alteration was made at the place of the making of the note, or that it was made elsewhere than in Massachusetts, where it was payable, and where the party produced it altered. There was, therefore, an absence of any evidence whatever, of the place of the alteration of the note, other than that which was afforded by the production of it in its altered state. And that was held, and rightly, as evidence sufficient to warrant the inference that it was altered there. This case, therefore, does not differ in principle from the cases before cited. In the case cited from 5 Pickering, I apprehend it would not have been held that the fact of uttering the note in the county was not sufficient to warrant the inference that it was made there, if it had not appeared, on its face, to have been made elsewhere: a fact which, though evidently very

natural, the reporter seems inadvertently to have omitted to note, and which, consequently, is not noted in the references to the case, in the notes to the American editions of the elementary works on Criminal Law, to which we have had reference. I do not doubt that, if the deed, on its face, had not purported to have been made in a different county, and there had been no extrinsic evidence on the subject, the jury might have inferred that it was made where the venue was laid in the indictment, from the fact that it was uttered there. But it is very clear that that is not sufficient, where the instrument purports on its face that it was made elsewhere, and there is nothing to counteract the *prima facie* presumption, arising from the face of the instrument, that it was actually made where it purports to have been made. Neither the opinion of Judge Story in the case cited by the Attorney General, nor any case that we have been enabled to find in the books to which we have access, warrants a contrary opinion. We conclude, therefore, that on this ground the judgment must be reversed. And this opinion might have dispensed with the necessity of considering the other questions in the case, were it not that, upon another trial, the same questions may again arise for adjudication, and their present disposition may supersede the occasion for a second appeal, or at least a reconsideration of the same questions in case of another appeal.

It is not material to determine whether the Court erred in excluding the notarial certificate attached to the deed. It formed no part of the instrument alleged to have been forged; and the testimony of the notary himself, it would seem, would have been better evidence of any material fact, which it was proposed to prove by it, than his certificate.

Nor is it material to revise the rulings of the Court, upon instructions to the jury. It may be proper to observe, however, that in so far as the charge assumes, and leaves it to the jury to infer, from the terms in which it is expressed, that they were at liberty to find that the signature to the deed was in the hand writing of the accused, it may well be questioned

whether it was not calculated to mislead, as there was no evidence upon that point. An examination of the facts, in reference to the charge of the Court, has suggested a doubt whether, in making up the statement, some of the evidence was not inadvertently omitted. Be that as it may, the case must be here determined upon the evidence contained in the record. We need only add that we attach no consequence to the use of the word "rumor," in the statement of facts, in reference to the evidence of the death of the person by whom the deed professes to have been made. That word was evidently the word chosen by counsel in drawing up the statement. If used by the witnesses, it doubtless was in the sense of reputation or report, and it is not material what word the witnesses used, as it is very clear what they meant.

For the reasons before stated, we are of opinion that the judgment be reversed, and the case remanded for a new trial.

Reversed and remanded.