118     227
102a  1682

THE STATE v. FLANDERS, *Appellant.*

Division Two, November 21, 1893.

1.  **Criminal Law:** OBTAINING DEED BY FALSE PRETENSE: INDICTMENT: DUPLICITY.   An indictment under Revised Statutes, 1889, sec. 3564, for obtaining from another a deed to his land by means of false pretenses is not open to the objection of duplicity because it avers obtaining both the signature to the deed and the title to the land.

2.  ———: ———: ———: ———.   The gist of the offense is obtaining the signature to the deed with intent to cheat and defraud.

3.  **Criminal Law:** EVIDENCE: WAIVER.   Objection to the action of the court in refusing to permit evidence to be introduced in support of a special plea to the indictment comes too late when made for the first time in the motion for a new trial.

4. ———: CONSPIRACY: EVIDENCE. Acts and declarations of another may, in the discretion of the court, be admitted against defendant prior to the proof of a conspiracy between them.

5. ———: ———: ———. Proof, however, of such conspiracy must be afterwards made, though it may be shown by circumstances as well as by direct and positive evidence.

6. ———: ———: ———. Though the declarations of a co-conspirator were made after the common enterprise is at an ond, yet their admission will not constitute reversible error where thoy were immaterial and the appellant was not prejudiced thereby.

7. ———: LOST DEED: CERTIFIED COPY. Evidence that the deed, the signature to which defendant was charged with having obtained by false pretenses, had been destroyed, afforded a sufficient foundation for the admission of a certified copy from the recorder's office.

*Appeal from Jackson Criminal Court.*—HON. J. W. WOFFORD, Judge.

AFFIRMED.

*Samuel Foster, Kenneth McC. De Weese* and *Boland & O'Grady* for appellant.

(1) The indictment is bad for duplicity, and charges no crime. The court erred in n'ot sustaining the defendant's demurrer to the indictment. *United States v. Nunnemacker*, 7 Biss. 129-131; *Jackson v. State*, 11 Ohio, St. 104; *State v. Berrman*, 8 Nev. 262; *State v. Burt*, 64 N. C. 619. (2) The court erred in denying defendant's petition asking permission to prove that the grand jury that found the indictment was so unlawfully drawn and summoned as to constitute no grand jury, and hence their acts were void, and not merely voidable, and an indictment found by them was no "true bill," and conferred no jurisdiction upon the court over the subject-matter of the alleged crimes. It is never too late to raise and urge a want of such juris-

diction.  (3)  The court erred in overruling defendant's objection where the state was permitted to prove the acts and declarations of appellant's codefendant, Sleek, done and made in the absence of defendant Flanders, before any evidence of collusion or confederacy between them had been given.  *Walls v. State*, 125 Ind. 400-402; *Ormsby v. People*, 53 N. Y. 473-474;  (4)  It was a fatal error to admit evidence of acts and declarations of Sleek after the consummation of the alleged crime.  *State v. Hilderbrand*, 105 Mo. 318; Rapalje's "Larceny and Kindred Offenses," sec. 507, p. 732; *United States v. Gooding*, 12 Wheat. 469; *Belcher v. State*, 125 Ind. 419;  *Walls v. State*, 125 Ind. 400; *Ormsby v. People*, 53 N. Y. 472; *Polk, v. State*, 45 Ark. 165; *State v. Fredericks*, 85 Mo. 145; *State v. Duncan*, 64 Mo. 263; *Latham v. Agnew*, 70 Mo. 48.  (5)  The court erred in admitting the certified copy of the deed in evidence.  *First.* Defendant had not been notified to produce the original and the original was the best evidence.  *Second.* The deed does not on its face appear to have been the one executed by, Goetz on the twenty-third of April, and by his wife on the twenty-fifth of April, as the deed in question was shown to have been.  (6)  At the close of the state's evidence the court should have struck out all the evidence of acts and declarations of Sleek.  *Walls v. State*, 125 Ind. 400-402; 2 Roscoe's Criminal Evidence, marg. p. 13; *Berry v. State*, 31 Ohio St. 219; *Ormsby v. People*, 53 N. Y. 472.  (7)  The evidence as a whole is insufficient to sustain the verdict.  *Ormsby v. People*, 53 N. Y. 472; *People v. Bennett*, 49 N. Y. 137; *State v. Healy*, 50 Mo. App. 243; *State v. Hilderbrand*, 105 Mo. 318; 2 Bishop on Criminal Law [8 Ed.], secs. 461-452, p. 265, 266, and sec. 483, p. 276, etc., and cases there cited.  (8)  The court erred in giving and refusing instructions.

*R. F. Walker*, Attorney General, *Marcy K. Brown*, Prosecuting Attorney and *J. J. Williams*, Assistant Prosecuting Attorney for the state.

(1) The indictment is not open to the objection of duplicity. 1 Bishop on Criminal Procedure [3 Ed.], secs. 440 and 480. Revised Statutes 1889, sec. 3535. (2) The indictment charges a pretense of an existing fact and that the Goetzes were deceived by the false pretense; this is sufficient even though an accompanying promise is charged and proved. *State v. Johnson*, 80 Mo. 97; *State v. Sarony*, 95 Mo. 349. (3) The description of the property in the indictment is sufficient. *State v. Scott*, 48 Mo. 422; *State v. Lawn*, 80 Mo. 242; *State v. Ware*, 62 Mo. 597; *State v. Watson*, 65 Mo. 115. (4) It is a matter resting in the discretion of the court to admit in evidence the acts and declarations of an alleged co-conspirator before proof of the conspiracy. *State v. Walker*, 98 Mo. 95; 2 Bishop on Criminal Procedure [3 Ed], sec. 227. (5) The evidence tended to show the conspiracy which may be inferred from facts and circumstances. *State v. Walker, supra; Goetz v. Flanders*, 22 S. W. Rep. 945. (6) Nor did the court err in admitting evidence after the alleged termination of the conspiracy. *First.* The conspiracy was not ended. *Second.* The objection was not made in the lower court. (7) The record copy of the deed was rightly admitted in evidence.

BURGESS J.—At the January term, 1893, of the Jackson criminal court the defendant was jointly indicted with one Henry Sleek, charged with feloniously and designedly obtaining from Ludwig Goetz and Henrietta Goetz, his wife, by means of false and fraudulent representations, a general warranty deed to lot No. 8, of block No. 63, in Kansas City, Mo., with

the intent to cheat and defraud.  At the same term this defendant was arraigned and entered his plea of not guilty.  He then filed his separate demurrer, which was by the court overruled and the cause continued until the next regular term.  Defendant thereupon filed his special plea to the indictment, which was by the court denied.  At the April term, 1893, of said court, the defendant was tried, convicted, and his punishment assessed at imprisonment in the penitentiary for a term of three years.  And after unsuccessful motions for a new trial and in arrest, defendant appealed to this court.

The testimony discloses these facts:  That on the twenty-third day of April, 1890, Ludwig Goetz and his wife were the owners of two houses and lots, described as lot eight, in block No. 63, in Eastern Kansas, an addition to the city of Kansas, that they had lived in one of these houses for more than twenty years, and rented the other house to a tenant; that Dr. Flanders, the defendant in this case, resided near them, and, had made numerous efforts to purchase this property. These people disliked Flanders and would have nothing to do with him, and refused at all times to sell the property to him.  They were poor, ignorant Germans, and unable to read or write English.  On this property were two mortgages, amounting to about $2600. A few weeks prior to April 23, one Henry Sleek, who is jointly indicted for this crime with this defendant, learning of the mortgage upon this property, went to Goetz and wife and urged them to permit him to secure for them a loan of eastern money on long time, sufficient to make up and satisfy the other mortgages, which they agreed to do.  A general warranty deed was presented to them and represented to be a deed of trust to secure this loan of eastern money, and was signed by them and duly acknowledged, which conveyed

to defendant, Flanders, the property above described. Flanders accepted the deed, and when informed of the fraud refused to reconvey the property. He also refused to pay off the other mortgages, but offered to buy them, providing the parties would assign them to him; this they refused to do, but offered if Flanders would pay them, to satisfy and discharge them upon the record. The testimony tends to show that Sleek was the agent of and acting for this defendant, yet at no time did he convey the knowledge or intimate to Goetz or his wife that the transaction was being made with Flanders. Goetz and his wife both positively deny any knowledge as to the contents of the deed signed by them, or that they ever authorized Sleek or any one else to sell the property for them.

The defendant's first contention is that the indictment is bad for duplicity and that the demurrer thereto should have been sustained. It is contended that the indictment charges the defendant with having in the transaction obtained two separate and distinct articles, real estate, which is one offense under the statute, and signatures to a deed, which is another offense, the punishment for which is different, and that the indictment is therefore double.

After making all the necessary averments as to false representations, the indictment contains the following allegations:

"And the said Henry Sleek and Francis L. Flanders then and there, with the felonious intent to cheat and defraud the said Ludwig Goetz and Henrietta Goetz of their right, title, interest and property in and to said lot eight (8), feloniously and designedly, by means of said pretenses and representations so made as aforesaid, did obtain and receive of and from the said Ludwig Goetz and Henrietta Goetz the execution, acknowledgment and delivery as aforesaid, of the war-

ranty deed aforesaid, and all the right, title, interest and property of the said Ludwig Goetz in and to said lot eight."

Then follows the allegation of the value of the property, and the indictment closes with the allegation of knowledge on the part of the defendant and Sleek.

The section of the statute under which the indictment was drawn (sec. 3564, Revised Statutes 1889), provides that, "Every person who, with intent to cheat or defraud another, shall designedly, by color of any false token or writing, or by any other false pretense, obtain the signature of any person to any written instrument, * * * shall, upon conviction thereof, be punished in the same manner and to the same extent as for feloniously stealing the money, property or *thing* so obtained."

The punishment for such an offense is fixed by section 3541, Revised Statutes, 1889, at imprisonment in the penitentiary not exceeding five years, or in the county jail not less than six months, or by fine not exceeding $1,000 or less than $500, or by both a fine not less than $100 and imprisonment in the county jail not less than three months.

The gist of the offense is the obtaining the signatures to the deed, an instrument of writing with intent to cheat and defraud, and all other averments as to the acknowledgment and delivery of the deed, and the title of Goetz in and to the property were mere surplusage and of no consequence. If the *thing*, that is, deed was thus obtained, the offense was then complete. Mr. Bishop (Vol. 1, Criminal Procedure, sec. 479), says that if an indictment is founded on a statute, and it contains allegations covering all the terms of the statute and making a complete offense, and then if it adds something by way of making the offense appear more enormous, the latter matter may be disregarded as

mere surplusage. Again he says, in substance, sec. 480, suppose there is matter in the indictment defectively alleged; yet if rejecting all this, enough remains to meet the requirements of the law, the indictment is good; the surplusage passes for naught. *State v. Meyers*, 99 Mo. 107.

In the case of *Commonwealth v. Bolkom*, 3 Pick. 281, it was held that an indictment charging an innholder with suffering persons "to play at cards and other unlawful games," the words "unlawful games" might be rejected as surplusage.

The surplusage words employed in this indictment do not in any manner affect its meaning or charge any criminal offense, and should be disregarded. The indictment is not double and is we think sufficient.

The record discloses the fact that on the sixth day of April, 1893, counsel for defendant filed what they called a special plea to the indictment alleging that the grand jury that found the indictment was not legally drawn and summoned, and that their acts were void, asking permission to introduce evidence in support of the plea, which was denied by the court. No exception was saved to the action of the court in regard to this plea, and it cannot now be reviewed by this court: It was too late to raise this question for the first time on the motion for a new trial. *State v. Williams*, 77 Mo. 310; *State v. Burnett*, 81 Mo. 119; *State v. Foster*, 115 Mo. 448.

Objection is taken to the action of the court in permitting proof of the acts and declarations of defendant's co-indictee, Sleek, done and made in the absence of defendant, before any evidence, as he contends, of collusion or confederation had been introduced. This under the rulings of this court rests largely in the discretion of the trial court. It would be error if such proof was admitted unless such conspiracy was shown

before or after such evidence was introduced. It is well settled law that when a crime is committed by several persons the acts and declarations of one cannot be shown against the others unless they are all conspirators, and in order to make the acts and declarations of one admissible against the others, such conspiracy must be shown to exist either before or after such evidence is introduced. It may be shown by circumstances as well as by direct and positive evidence.

In the case of *State v. Walker*, 98 Mo. 95, BLACK, J., in speaking for the court, says: "It is for the court, in the first place, to say whether there is any evidence of a conspiracy, and for the jury to determine whether there was one, and its objects. Again, it is a matter resting largely in the discretion of the trial court as to when that proof shall be offered. The prosecution may prove the declarations and acts of one, made and done in the absence of the others, before proving the conspiracy, provided the proof is afterwards made. *State v. Ross*, 29 Mo. 32; *State v. Daubert*, 42 Mo. 239; Wharton's Criminal Evidence [8 Ed.], sec. 698*a*. It is therefore not material at what time the proof of a conspiracy was made. A conspiracy, it is to be remembered, can seldom be shown by direct and positive evidence. It need not be so shown. It may be inferred from the circumstances. 2 Wharton's Criminal Law [9 Ed.], sec. 1398."

The evidence shows that Sleek in the first place was pretending to Goetz to secure a loan for him for about $2,600, and while Goetz and wife would have nothing to do with defendant, Sleek had the deed made out to defendant without their knowledge; that he, Flanders, furnished whatever money was furnished, and, as soon as he got the deed, demanded rent of one of the tenants, and began negotiations for the adjustment of other debts, which were liens on the property,

and in one instance declined to pay off a note executed by Goetz, unless the holder would sign it to him. These and many other occurrences, unnecessary to detail here, had a very strong tendency to show a conspiracy between him and Sleek to obtain the deed by fraud, and fully justified the court in admitting evidence of the acts and statements of Sleek against defendant before the deed was delivered to him.

Henrietta Goetz, a witness for the state, was permitted to testify over the objection of defendant to a conversation that she had with Sleek in his office after the deed was executed and delivered, in which she stated that "Flanders was at our place to collect rent. After that I got my son and go up to Sleek and asked him to let me see the papers I signed. He said the papers were with Mr. Flanders. I said what has he got to do with our property? He said he is the man that furnished the money. I told him I didn't want the money from Flanders. I didn't want anything to do with Flanders. I told him he was there to collect the rents; what has he got to do with the rent? Flanders said he has got a deed, he told the tenants. Sleek said he is just fooling you, you must not believe that; this is just a loan you signed." There is no question but that this conversation with Sleek and his statements made at the time having occurred after the conspiracy was ended were inadmissible against Flanders. The common enterprise was then at an end, and no statements made by either one of the conspirators in the absence of the other was admissible as against the one not present. This has been the uniform ruling of this court. *State v. Seasholts*, not yet reported; *State v. Duncan*, 64 Mo. 266; *State v. Fredericks*, 85 Mo. 145; *State v. Melrose*, 98 Mo. 597; *State v. Hilderbrand*, 105 Mo. 318; *State v. McGraw*, 87 Mo. 161.

But the matters testified to by this witness were of

such an immaterial and unimportant character that this court would not be justified in reversing the judgment on that ground alone. In fact the declarations of Sleek made in that conversation had no tendency to implicate or incriminate Flanders.    On the contrary, Sleek stated in the coversation that the paper signed was a mortgage—"this is just a loan you signed." These declarations asserted the innocence of Sleek, and if he was innocent, Flanders was.    If Sleek's statements were true, no crime was committed, as the transaction was nothing but a loan, and while Sleek stated that Flanders furnished the money, Flanders himself testified that he did.    It is difficult to conceive how defendant could have been prejudiced by the admission of this testimony.

The court admitted in evidence a certified copy of the record of the warranty deed from Goetz and wife to defendant, to which defendant objected, because not the best evidence, and because the proper foundation had not been laid for its introduction.    In prosecutions for forgery, "Before evidence of the forgery will be admitted at the trial, the forged instrument must be produced, or its non-production justified from necessity, as by showing that it is lost or destroyed or not within reach of the process of the court, or is in the possession of the defendant.    And, in the last instance, not in the others, reasonable notice must have been given him to produce it."    2 Bishop on Criminal Procedure [3 Ed.], sec. 433.    The same rule by parity of reasoning would seem to apply in the case at bar.    The evidence shows that the original deed was in the possession of the defendant, and the law is that he should have been given notice to produce it at the trial, unless it had been lost or destroyed.    Defendant testified that he showed the deed to Mrs. Goetz when she snatched it from his hand and tore it up.    She also made the same

statement when testifying as a witness. Defendant further stated that he did not have the deed with him, and that he could not say where the deed was. This made out at least a *prima facie* case of the loss or destruction of the deed, and secondary evidence was permissible for the purpose of showing its contents. *Foulkes v. Commonwealth*, 2 Rob. (Va.) 836; *Rex v. Haworth*, 4 C. & P. 254; *United States v. Britton*, 2 Mason, 464. And this by a copy from the records of deeds. *Henderson v. State*, 14 Tex. 503.

There seems to be no well founded objections to the instructions, as they cover every phase of the case and were well authorized by the evidence.

There are some other objections urged as to the rulings of the trial court, but they seem to be without merit.

The verdict of the jury establishes defendant's guilt beyond a reasonable doubt, and as there is no reversible error in the proceedings or record, the judgment will be affirmed. All concur.