### A. E. GREEN v. THE STATE.

*No. 1004.   Decided May 20th, 1896.*

1. **Forgery and Uttering—Jeopardy—Former Acquittal and Conviction— Construction of Statute.**

Art. 549a, Penal Code, provides that a conviction for forgery, uttering or attempting to utter a forged instrument, shall be a bar to any other prosecution based upon the same transaction or the same instrument of writing. Held: An acquittal for any of such offenses does not constitute a bar to prosecutions for the others—the statute limits the bar to convictions only, and a plea of jeopardy, based upon a former acquittal, was properly stricken out.

.2.  Same—Continuance—Evidence Immaterial.

On a trial for forgery of a note, where a continuance was sought by defendant for a witness by whom he expected to prove, that he intended to get work to make money to pay the note; and, if he failed to do so, that he intended to get the money from said witness.  Held:  Said testimony is immaterial, and relates to transactions which were foreign to, and in the future, at the time the forgery was committed, and the continuance was properly refused.

3.  Same—Charge of Court—Intent to Defraud.

On a trial for forgery of a note, where the court charges the jury, in effect, that before they could convict they must believe that defendant signed the names of persons to the note without their authority or consent, and with intent to defraud; this was sufficient to put the onus upon the State to prove that the forgery was with intent to defraud, without the necessity of additional instructions upon the subject.

4.  Same.

It is not required of the State, in a prosecution for forgery, to prove that the intention of the accused was to injure or defraud any person in particular, or that any particular person was injured or defrauded by the forgery; but, it is sufficient, if it appears that possibly some one might be injured or defrauded thereby, and it is not error for the court to so instruct the jury.

APPEAL from the District Court of Jones.   Tried below before Hon. ED. J. HAMNER.

This appeal is from a conviction for forgery in altering a note by adding thereto the names of the sureties of the same, the punishment being assessed at imprisonment for two years in the penitentiary.

Defendant pleaded former acquittal and jeopardy, for uttering and passing the same forged instrument, for the forgery of which, by alteration, he was being prosecuted in this case.

The following statement, which is substantially correct, is taken from the brief of counsel for appellant:  The appellant, A. E. Green, was convicted in the District Court of Jones County for forgery by alteration as defined in Art. 432 of the Penal Code, by adding to his own promissory note the names of C. W. Sprabery, C. II. Partin and Jack Sprabery as sureties thereon.   His punishment was assessed at two years in the penitenttary, and his motion for new trial being overruled, he appealed to this court.

The material facts proven were as follows:   In Jones County, Texas, on the morning of the 15th day of December, 1894, defendant went into the bank of State's witness, R. V. Colbert, and applied to him to borrow $50 or $60.   Colbert asked whom he could give as security on the note, and defendant replied that he could give W. C. Sprabery, C. H. Partin and "Little Jack" Sprabery.   Colbert then told him that he could not let him have that much as his sureties might have it to pay.   Defendant then said he could do on $10; that he owed the Widow Scott some $10, and that he wanted to pay it.   Colbert then agreed to let him have the $10 on said security and drew a promissory note in usual form and had defendant to sign it.   Defendant then took the note and went in search of said sureties, who lived in the country some four miles.   When he had gotten near where they lived he was informed by one Lewis that W. C. Sprabery and C. H. Partin were not at home, so defendant returned

to Anson and went to said Colbert's bank, and about noon of said day wrote the names of W. C. Sprabery and C. H. Partin to the note and handed it in to Colbert. Colbert then asked him, "How about Jack Sprabery?" Defendant told him he had not been able to find him. Witness Colbert then told him to go again and see if he could not find him. Defendant then left and came back about 4 o'clock that same evening and wrote the name of Jack Sprabery to the note and handed it in to Colbert saying that he had found Jack Sprabery at the gin. Colbert paid him $9.85 and defendant paid part of his board bill with part of the money and with the remainder went to his home at his father's in Brown County, Texas, getting there on the evening of December 23rd, 1894. On the next morning he made arrangements with his father to get the money to send back to Colbert and wrote him a letter in which he enclosed the money, and he and his father, T. J. Green, went to Brownwood to mail the letter, and before it was mailed defendant was arrested on a telegram from witness, Orr, a deputy sheriff of Jones County, after which he got an envelope and enclosed the written letter and $10 in money and sent them to Colbert with instructions to pay note. W. C. Sprabery, C. H. Partin and Jack Sprabery did not sign their names to the note nor give defendant permission to sign their names; but defendant had worked with W. C. Sprabery and lived with him during the year 1894, and frequently bought goods on his employer's credit and in his name, and said Sprabery had always paid for said goods and ratified said acts of defendant. They were very intimate and Jack Sprabery and C. H. Partin were relatives and near neighbors of W. C. Sprabery and were intimate with defendant. Defendant wanted the money to go home to see his father. He had a good character up to the time of this trouble. He claims to have had no intention of injuring or defrauding. The only question about which there was any material controversy or conflict was the question as to the defendant's intent to injure or defraud, and the further question as to his belief that he had sufficient authority to sign the names, although not given as provided in Art. 441, Penal Code.

To support the State's theories on said questions she relied on the statements of defendant to witness, Colbert, that he wanted said money to pay the Widow Scott, and that he had found Jack Sprabery at the gin, together with his leaving the country at once.

To establish defendant's side of the questions, he offered the testimony showing that he went home from Jones County to spend Christmas with his parents; his arrangements to get money from his father, and the writing of the letter and going to Brownwood to send it before he was arrested; his good-character, and his own testimony of no intent to defraud or injure, and the testimony of himself and the witnesses, Sprabery and Partin, of his having frequently theretofore bought goods on Sprabery's account and in his name, and said Sprabery's payment therefor, together with his trip out there to see them before signing their names to the note.

*Legett & Cunningham* and *C. P. Woodruff*, for appellant.—The court erred in refusing to give special instructions 1 and 2 asked for by defendant, because the intent to injure is an element and part of the definition of the offense itself, and should have been given. Ham v. State, 4 Tex. Crim. App., 645. The charge of the court, to the jury, on the question of intent, wherein he instructs the jury as to such intent, that: "It is sufficient if it appears that possibly some one might be injured or defrauded thereby," is erroneous and upon the weight of evidence. Shanks v. State, 25 Texas Supp., 338; Montgomery v. State, 12 Tex. Crim. App., 323; Code Crim. Proc., Arts. 677, 685; Maddox v. State, 12 Tex. Crim. App., 432; Gentry v. State, 24 Tex. Crim. App., 85; 1 Whar. Crim. Law, §§ 1713, 717–718.

The charge is defective, in that it seeks to apply the provisions of Art. 431, of the Penal Code, as to forgery by making a false instrument, when the indictment charged a forgery by uttering a genuine instrument, as defined by Article 432. And, the court should have charged the law of Article 432, without the limitations and qualifications which were used. The charge is also erroneous, in that it nowhere charges the law applicable to defendant's defense of an honest belief of authority to sign the names to the note. Penal Code, Art. 441; Sweet v. State, 28 Tex. Crim. App., 223; McCay v. State, 32 Tex. Crim. Rep., 233.

*Mann Trice*, Assistant Attorney-General, for the State.

[No brief found with the record.—Reporter.]

HENDERSON, JUDGE.—Appellant was convicted of forgery, and given two years in the penitentiary, and from the judgment of the lower court he prosecutes this appeal. The appellant on the trial of the case interposed a plea of former jeopardy, which was struck out on motion for the State. The plea showed an indictment, with the proceedings in the trial and acquittal of the defendant for the passage of the same instrument alleged to have been forged in this case, and he claims that it was a good plea, and ought to have been sustained. The grounds of his plea are based on the amendment to title 14, Chap. 1, of the Penal Code, which added thereto article 450a (New Penal Code, 549a). Article 450a provides, in substance, that a conviction for forgery, uttering a forged instrument, or attempting to utter a forged instrument, shall be a bar to any other prosecution under said articles, based upon the same transaction, or the same forged instrument of writing, etc. The court did not err in sustaining the motion of the State in this case. If it be conceded that this law, which was passed after the indictment was found and the trial had in the former case, could have any effect, still the court did not err, because the record showed an acquittal, and the statute makes only a conviction a bar to a prosecution for any of the other offenses mentioned. Appellant made a motion to continue this cause on the ground of the absence of one T. J. Green. It appears that T. J. Green was the father of the defendant, and lived in Brown County, and that process of attachment was issued on the day after the indictment

was found in this cause, and when the case was called for trial said process had not been returned into court.    If the testimony of this witness was material, the diligence to procure his attendance must be conceded. The question then occurs as to the materiality of his evidence.    Appellant says in his application that he expects to prove by said witness that this defendant was unmarried, and was then a member of the said T. J. Green's family; that after the alleged forgery this defendant went immediately and directly from Jones County to said T. J. Green's home, in said Brown County, and immediately after his arrival at his said father's, defendant informed him that he was out of money, and owed the amount of this instrument alleged to have been forged, and asked where he could get work, out of which to obtain money enough to pay said amount, whereupon said T. J. Green advanced said defendant money enough to pay said note, and the defendant sent the money to R. V. Colbert in payment thereof; that defendant expects to prove by said witness, T. J. Green, that he made arrangements to pay said note long before the same became due.    In passing on the correctness of the ruling of the court on the motion for continuance, which, by the statute, is within the discretion of the court, we will examine the question as it came before the court on motion for a new trial.    There it appeared from the testimony of the State that the defendant, without any authority on the part of the two Spraberrys and Partin, whose names are alleged to have been forged to the note, signed their names to said note.    The defendant himself admitted in his testimony that he signed the names of the said parties to said note, and that they had not authorized him so to do.    He testified further, in this connection, in relation to what happened between him and his father when he went to Brown County: "I got home on December 22, 1894, and next morning went with my father, T. J. Green, to Brownwood, and was arrested.    I got the ten dollars from my father after I was arrested, and mailed my letter to Mr. Colbert, with the money order to pay the note.    I had come to town to send him the money that day, and was arrested before I had mailed the letter.    I intended to get work when I got home, to pay the note, and knew, if I did not succeed in getting work, I could get the money from my father, T. J. Green, with which to pay the note."    Appellant attached to the application for continuance a letter from his father, which contains what he would testify to.    Said letter is as follows, to-wit:    "Brownwood, Texas, Feby. 3rd, 1896.    Mr. J. F. Cunningham—Dear Sir:    I am looking for my wife to be confined every day, and I can't be at court unless she gets so I can leave her time enough to get there on the second Thursday.    If I can possibly leave her I will come.    You can prove by me, Ed asked me next day if I knew where he could get any work; that he had left out there, owing $16.    Yours truly, [signed] T. J. Green."    The testimony of the defendant does not even show that he mentioned the matter to his father at all until after he was arrested.    It shows that he intended to get work after he got home to pay the note,

36th Tex. Crim. Rep.—8.

and that he knew that if he did not get work he could get the money from his father with which to pay the note. The letter of his father does not show that he made any such statement to him in regard to the transaction, but merely states that his son, when he came home, asked him if he knew where he could get work; that he had left Jones County, owing $16. This evidence, in our opinion, establishes no defensive matter that could avail the defendant. It does not tend to show that he signed the names of the parties to the instrument in question with any semblance of authority; nor does it indicate that there was no design to defraud, on the part of the defendant, at the time he signed the names of the said parties to the said note. If he could have even proved what he alleged in his application, which the developments on the trial negative, still that would have been no defense, but merely a future transaction which would tend, in connection with the other circumstances in this case, to show that when the instrument was forged he did not then entertain the intention to injure or defraud. When the person signs the name of another person to an instrument, pledging the other person to pay money for him, unless it is with authority, or some semblance of authority or right, to sign the name of such other party, it will be no answer to a charge of forgery for him to say that he expected to pay off the obligation himself, or that he expected to get the money from some other person with which to meet the obligation. Appellant excepts to the refusal of the court to give the special charges asked by him to the jury. Said special charges are as follows: "(1) That, before the jury would be authorized to convict the defendant of forgery as charged, they must believe from the evidence, beyond a reasonable doubt, that the defendant, at the time he signed W. C. Sprabery, C. H. Partin and Jack Sprabery's names to said instruments, that he did it with intent to defraud and injure;" and "(2) that while it is not necessary, to constitute the offense of forgery, that some one must be injured or defrauded, it is necessary that the acts constituting the forgery, if any, must have been done with intent to injure and defraud." The court, in its charge to the jury, instructed them that, before they could convict the defendant, they must believe that he signed and added the names of said persons to said note without their authority and consent, and with intent to defraud. This put the onus upon the State to prove that the forgery was made with intent to defraud, and was sufficient, and it was not necessary to give the charges asked on this subject. Appellant also objects to the following charge of the court: "The false making of an instrument, to constitute forgery, must be done with intent to injure or defraud, and the injury must be such as affects one pecuniarily, or in relation to his property. But it is not required, in order to constitute this offense, that the accused, in committing the offense, intended to injure or defraud any particular person, or that any particular person was injured or defrauded by the forgery, but it is sufficient if it appears that possibly some one might be injured or defrauded thereby." Appellant claims that said charge announces incorrect rules of law, and misapplies the same to this case; that

it is a charge upon the weight of the testimony; and that under it they could find the defendant guilty without believing that the defendant, at the time he signed said names, entertained the intent to injure and defraud. In this case, as stated before, there is no question that the defendant signed the names of all of said persons without any knowledge or authority on the part of either of such persons. The testimony that he had, some six months before, worked for one of the Spraberrys, and that while working for him he was in the habit of buying goods for himself, and having the same charged to said Spraberry, does not afford even the semblance of implied authority to sign his name to the note. How the announcement of a legal proposition, as follows, "That it is not necessary, in order to constitute forgery, that any particular person was injured or defrauded by the forgery, but it is sufficient if it appears that possibly some one might be injured or defrauded thereby"—which is a correct enunciation of the law—could inure to the injury of the appellant, we fail to see. In Henderson v. State, 14 Texas, 503, it is said, "It is not required of the State to prove that the intention of the accused in committing the forgery was to injure or defraud any person in particular, or that any particular person was injured or defrauded by the forgery, but it is sufficient if it appears that possibly some one might be injured or defrauded thereby." And, to the same effect, see 8 Amer. and Eng. Ency. of Law, pp. 459–461, and authorities there collated. · If the instrument itself, from its nature, was not calculated to injure or defraud any person, it would not be the subject of forgery, or if the circumstances attending the making of an instrument were such that the intent to injure or defraud any person does not appear, there is no forgery; but the signing of the names of other persons to an instrument which imports a pecuniary obligation on its face, without any authority or semblance of authority from the persons whose names are signed to the same, and the uttering of same, establishes certainly the possibility of injury to such other persons, and about this there can be no question, and, as stated before, it is no answer if the party shows that he expected to pay off the obligation himself, or to procure some one else to do it. In our opinion the charge of the court as to the defendant's going to Brownwood, and what he did there, was not calculated to injure the defendant. The charge, in fact, was more liberal on his behalf than the law authorizes. There being no errors in the record, the judgment is affirmed.

*Affirmed.*