CITY OF WORCESTER *vs.* INHABITANTS OF NORTHBOROUGH.

Worcester.    Sept. 29, 1885. — Jan. 5, 1886.    FIELD, C. ALLEN, & GARDNER, JJ., absent.

A book published under a resolve of the Legislature, authorizing the Adjutant General to publish a list of the officers and soldiers of this Commonwealth in the late civil war, and designating the name of the town or city upon whose quota said soldiers were credited, is admissible in evidence on the issue of the military settlement acquired by a soldier under the Pub. Sts. *c.* 83, § 1, *cl.* 11.

In an action by one town against another for the support of a pauper alleged to have a settlement in the defendant town under the Pub. Sts. *c.* 83, § 1, *cl.* 11, a clerk in the Adjutant General's office was allowed to testify that in 1862 the Adjutant General's department was governed by the place of residence stated in the descriptive rolls of regiments, in assigning credits to towns. *Held,* that the evidence was admissible, although the clerk was not employed in said office until July, 1863, and only professed to be able to testify to the fact from his knowledge of the customs of the department after he was employed there.

CONTRACT to recover $76.99, for expenses incurred in the support of Johanna Hanley and her infant child as paupers. Writ dated February 9, 1884. Trial in the Superior Court, without a jury, before *Barker* J., who allowed a bill of exceptions in substance as follows:

It appeared that on December 28, 1881, Johanna Hanley fell into distress in the plaintiff city, and was taken by its overseers of the poor to the Worcester City Hospital, which was maintained by the plaintiff, and was supported there by said overseers until February 13, 1882; and that during that period she was delivered of a child, which was also supported at said hospital until January 21, 1882, when it was taken away and placed by said overseers under the care of a nurse.

On January 7, 1882, said overseers duly notified the overseers of the poor of the defendant town of the facts relating to said paupers, and requested their removal; and on January 21, 1882, the overseers of the poor of the defendant duly answered, denying that said paupers had a legal settlement in the defendant town.

The overseers of the poor of the plaintiff city, on or about March 1, 1882, paid to the nurse in whose care said child had been placed by them the sum of $9.85, for twenty-three days' board and care of said child; and in this action the plaintiff seeks to recover said sum of $9.85 so paid for the board of said child, and also the sum of $67.14 for the board and attendance of the mother, Johanna Hanley, from December 28, 1881, to February 13, 1882, being six weeks and five days at the rate of $10 per week, which price it appeared was a reasonable charge for her support.

Johanna Hanley was the wife of Francis E. Hanley, who was the son of Francis Hanley, deceased, and the plaintiff contended that Francis Hanley acquired a settlement in the defendant town under the provisions of the Pub. Sts. *c.* 83, § 1, *cl.* 11, which settlement, if acquired, it was agreed that Francis E. and said paupers followed.

Francis Hanley, who had resided in the town of Westborough for about a year prior thereto, was enlisted and mustered into the military service of the United States on January 27, 1862, as part of Company H, 15th Regiment Massachusetts

Volunteer Infantry, and died while in said service, on July 5, 1862.

To prove that Francis Hanley was assigned to the town of Northborough as part of its military quota, the plaintiff produced and offered in evidence the following documents:

1. A supplementary descriptive roll of recruits forwarded to Camp Cameron from Worcester, Mass., dated January 29, 1862, and sent by H. P. Jorgenson, recruiting officer of the 15th Regiment, to Adjutant General Schouler, and entitled " Descriptive Roll of Recruits of the 15th Regiment of Infantry in the Massachusetts Volunteers under the command of Colonel Devens. Enlisted by Lieut. H. P. Jorgenson, Recruiting Officer 15 Reg."

2. The list of soldiers claimed by the selectmen of Northborough in a return to the Adjutant General's office, made in pursuance of General Order No. 38 dated August 21, 1862, an extract from which order is printed in the margin.* The name of Francis Hanley did not appear on this return.

3. A list of soldiers claimed by the town of Westborough in a similar return to the Adjutant General's office, upon which was the name of Francis Hanley, but the number of the regiment into which he had been enlisted was not stated therein.

4. The table made by Adjutant General Schouler in October, 1862, assigning quotas to cities and towns, in numbers but without names, under General Order No. 52, an extract from which order is printed in the margin.† In this table the quota of the town of Northborough was stated to be ninety-seven, and the

---

* " The selectmen of the several towns and mayor and aldermen of the several cities will immediately return to the office of the Adjutant General a sworn statement of the names and number of their inhabitants who have heretofore been mustered into the service of the United States, whose stipulated term of service has not expired with the regiments into which they have been enlisted. This return is directed in order that the draft to be made may be equalized so far as possible, and towns and cities which have heretofore furnished more men than their just proportions may have due allowance for the same in the draft."

† " Ordered that the number of the militia to be furnished by the several towns and cities for nine months' service in accordance with General Order No. 51, and in answer to the call of the President of the United States dated August 4, 1862, be those stated opposite their respective names in the third column of figures in the schedule herewith published."

town was credited with seventy-eight men "then furnished," and nineteen men were "called for." These four documents were produced from the Adjutant General's office.

5. A printed book, entitled "Record of the Massachusetts Volunteers 1861–1865, published by the Adjutant General under a Resolve of the General Court. Boston, Wright & Potter, Printers to the State, No. 79 Milk Street, 1870." In this book, volume 2, in a list of the soldiers of the Fifteenth Regiment, appears the name of Francis Hanley, and opposite his name, in a column marked "Residence or place credited to," is printed "Northborough."

The resolve referred to in said title, c. 98 of the Resolves of 1866, was put in evidence. There was no further evidence in relation to this book. To the admission of this book as evidence the defendant objected, but the judge admitted it.

Walter A. Kezar, called by the plaintiff as a witness, testified that he had been a clerk in the office of the Adjutant General of this Commonwealth from July, 1863, to the present time; and, against the objection of the defendant, was permitted to testify that in 1862 Francis Hanley was assigned by the Adjutant General to the town of Northborough as a part of its quota, that he was able to state this from an inspection of the descriptive roll (No. 1); that this department in 1862 was governed by the place of residence stated on the descriptive rolls in assigning credits to towns; that he was able to state this from his knowledge of the custom of the department after he was employed there in July, 1863; that in said table (No. 4) Francis Hanley was included in the number of men credited to the town of Northborough; that the Adjutant General made up said table (No. 4) from the residence stated in the descriptive rolls; that the fact that the town of Westborough claimed Francis Hanley in its return (No. 3) had no effect in making up said table (No. 4), as the name of the regiment in which he was enlisted was not stated in said return. It further appeared from the evidence of Kezar, that there were no records of the department showing any assignment of credits by name to towns, and that he (Kezar) had no knowledge of what was done in the department until after his employment there in July, 1863, except as the same appeared of record, or what he had learned

after his said employment. To the admission of all this evidence the defendant objected, but the judge admitted it.

There was no other evidence that Francis Hanley was ever assigned to, or allowed as a part of, the quota of Northborough, under any call of the President during the civil war.

The defendant asked the judge to rule as follows : " 1. There is no sufficient and competent evidence to prove that Francis Hanley was ever assigned to, or allowed as a part of, the quota of Northborough.   2. The plaintiff cannot in this action recover for the board and attendance furnished to Johanna Hanley by the plaintiff city prior to February 9, 1882, and can only recover the sum of $9.85, the amount paid by the overseers of the poor of the plaintiff city for the board of the child and for the board and attendance of the mother which was furnished within two years prior to the date of this writ." The judge declined so to rule, but ruled that the foregoing evidence was competent and sufficient to show that Francis Hanley was assigned to the town of Northborough as a part of its quota, and found for the plaintiff in the sum of $83.58, being the full amount claimed, with interest from the date of the writ.

To the admission of the foregoing evidence, and to the above rulings and refusals to rule, the defendant alleged exceptions.

*H. C. Hartwell,* for the defendant.

*F. P. Goulding,* for the plaintiff.

HOLMES, J.  1. It is not denied that the printed book put in evidence was in fact one of the volumes printed under *c.* 98 of the Resolves of 1866, as it purported to be.  This being so, it was properly admitted.  Assuming that the resolve could not directly affect the rules of evidence, it made the document a public document, and it would seem to have been passed with the purpose of causing the facts to be recorded, while still fresh, for the benefit of the public.  It was recognized by an act of the Legislature.  St. 1866, *c.* 301, § 1.  The facts collected in it were public facts.  Stark. Ev. (10th Am. ed.) 273.  They were known to the Adjutant General, *ex officio.*  See *Brockton* v. *Uxbridge,* 138 Mass. 292.  Moreover, this class of evidence is not strictly confined to facts within the personal knowledge of the officer making the record.  See *Hanson* v. *South Scituate,* 115 Mass. 336 ; *Whiton* v. *Albany Ins. Co.* 109 Mass. 24.

2. The clerk, Kezar, was properly allowed to testify, that in 1862 the Adjutant General's department was governed by the place of residence stated in the descriptive rolls in assigning credits to towns, although Kezar was not employed in that office until July, 1863, and only professed to be able to state this from his knowledge of the custom of the department after he was employed there. It would be difficult to say that the jury might not have inferred what was the practice of the office in 1862 from direct evidence of what it was in 1863. But it is evident that Kezar's testimony was more than a naked inference of that sort. A clerk who is in the same office, and taking part in the same routine a year later, and who continues there for a long time, practically knows from a multitude of small details, which he cannot hope to reproduce, whether the course of business which he finds is new or long established. Moreover, Kezar's testimony seems to have been, not merely the best, but the only evidence that could have been obtained upon this point. See *Townsend* v. *Pepperell*, 99 Mass. 40, 43, 44.

3. It follows, that the court rightly refused to rule that there was no evidence that Hanley was ever assigned as part of the quota of Northborough.

4. The last ruling requested should have been given, — to the effect that the plaintiff could only recover for the board and attendance furnished within two years of the date of the writ. Pub. Sts. *c.* 84, § 14. We agree with the defendant, that a town furnishing relief to a pauper is not required to wait until it has stopped giving relief before it can bring suit. The services were rendered and the liability accrued *de die in diem.* On this ground alone, the exceptions must be sustained, unless the plaintiff remits all but $15.56. *Exceptions sustained.*