**STATE, Plaintiff, v. HARLAND, Defendant.**

Common Pleas Court, Geauga County.

Decided 1951.

Charles P. Baker, Jr., Painesville, for plaintiff.
Mark Sperry, George Buchwalter, Chardon, for defendant.

## OPINION

By THOMAS, J:

Defendant demurs to all seventy-two (72) counts of his indictment. The counts relate to thirty-one (31) different telephone calls which the defendant is charged with having permitted George Gordon, a prisoner in the county jail, to make "beyond the confines of his cell" on twenty-four (24) different days between the hours of 8:00 P. M., and 8:00 A. M. These days specified are during the period from March 13, 1951, through May 7, 1951.

Each count refers to one or more telephone calls made on the same day. For each day's calls, whether one or more, the defendant is charged severally under §§12886, 12849 and 12850 GC.

As his chief claim that the indictment is insufficient he urges that he is not informed as to whether the State charges that he

"actively performed the acts which the State contends constitutes a violation of the statutes in question, or whether the State will contend that he had knowledge of or consented to the acts being performed by others and that such knowledge and consent forms the basis of the charges set forth in the indictment."

The absence of such allegations is evident.

The necessity for such allegations is contested by the State, which contends that

"In the case at bar all of the counts of the indictment are couched in the exact wording of the statute and then there is added thereto specific facts of the persons, time and place which constitute the violation of the section charged. Certainly the defendant is given notice of the offense of which he is charged. The indictment is complete and proper on its face."

Counts one, two and three typify all the counts. Each will be examined in the light of defendant's claim that an essential element of each offense charged is personal active performance of the acts charged or knowledge of or consent to the acts being performed by others.

Count one, states (omitting formal allegations):

"Stuart Harland on or about the 4th day of April, 1951, at the County of Geauga aforesaid, having charge of the county jail of Geauga County, Ohio, did neglect or refuse to obey or conform to a rule or regulation lawfully prescribed by the Court of Common Pleas of said County for the management and regulations of such jail, or did omit or neglect to perform a lawful duty in respect thereto, to-wit: permitted

one, George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M. on April 4, 1951."

Except for the concluding language (following the word, to-wit), this count is drawn in the language of §12886 GC, which provides:

"Whoever, having charge of a county jail, neglects or refuses to obey or conform to a rule or regulation lawfully prescribed by the court of common pleas for the management and regulation of such jail, or omits or neglects to perform a lawful duty in respect thereto, shall be fined not less than five dollars nor more than one hundred dollars."

Attention must be paid to a recent decision of the Supreme Court (**State v. Yudick, 155 Oh St, 269**), to the effect that an indictment for automobile manslaughter, couched in the language of §6307-18 GC, and which enumerates certain sections of the traffic code claimed to be violated and which seeks to specify the nature of those violations, must assert sufficient facts to constitute violations of such sections of the traffic code. This qualifies the general rule of criminal pleading, authorized by §13437-4 GC, and recognized in the Yudick decision, that an indictment may charge an offense "in the words of the enactment describing the offense or declaring the matter charged to be a public offense."

In view of the language of the counts of the present indictment, the rule of the Yudick case is applicable here.

Thus, the concluding language of Count One which reads:

"to wit: permitted one, George Gordon, to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M., on April 4, 1951,"

seeks to specify the manner in which "Stuart Harland * * * having charge of the county jail,"

"Did neglect or refuse to obey or conform to a rule or regulation lawfully prescribed by the Court of Common Pleas * * * for the management and regulation of such jail, or did omit or neglect to perform a lawful duty in respect thereto."

In conformity with the Yudick decision it is essential that the concluding language of Count One state facts which constitute a neglect or refusal of the Sheriff to conform to a lawfully prescribed jail rule or an omission or neglect to perform a lawful duty in respect to the jail.

It is first essential to determine the meaning of "neglect" as used in §12886 GC. "Neglect" obviously means something different than "refusal" for the statute outlaws a "neglect" or "refusal."

"Refusal" means a denial, a declination to do what is

requested or ordered. A "refusal" is a wilfull, conscious and deliberate act.

"Neglect," on the other hand, signifies a failure to act which may be unintentional. It is like the term negligence which the Supreme Court has said "does not involve intent or a purpose to do a wrongful act or to omit the performance of a duty." **Tighe v. Diamond, 149 Oh St, 520 at 524.**

That the word "neglect" as used in §12886 GC, is devoid of the element of intention is substantiated by the fact that in §12850 GC (which section will be considered in connection with Count Three), the word "neglects" is modified by the word "Wilfully."

"Neglect as used in §12886 GC, is construed to mean an **unintentional** failure to act, whereas (as later explained), "wilfully * * * neglects," as used in §12850 GC, is construed to mean intentionally failing to act.

It follows that §12886 GC may be violated by an unintentional failure to conform to a lawfully prescribed jail rule or by an unintentional failure to perform a duty in respect to the jail.

Since Wilfulness is not an essential element of a violation of §12886 GC, no reason is perceived why a sheriff may not be guilty of a violation of this section wholly as the result of the neglect of a deputy to conform to a lawfully prescribed jail rule even though the sheriff was unaware of and did not consent to the deputy's neglect.

A sheriff is enjoined by statute (§3157 GC) to have charge of the county jail, to have charge of and to keep safely all persons confined there, to attend to the jail, and to govern and regulate the jail according to any lawfully prescribed jail rules.

Even in the absence of a statute making these duties non-delegable a sound public policy would require that these duties, whose performance is essential to public order, remain with the sheriff where they are placed by law.

But, the principle of non-delegability has statutory sanction. For by §2831 GC, a sheriff is expressly made responsible for a deputy's neglect of duty and a deputy's mis-conduct in office.

Its legal effect is that although a sheriff may assign to deputies the physical tasks of guarding and caring for prisoners, of enforcing lawfully prescribed· jail rules, and of safely keeping the prisoners, the sheriff cannot thereby relieve himself of, but on the contrary is accountable for any neglect of duty or mis-conduct in office of a deputy, which arises in the deputy's performance of these assigned tasks.

If a sheriff cannot delegate his statutory responsibility to conform to lawfully prescribed jail rules, and if by statute he is responsible for a deputy's neglect to conform to such rules, then every such neglect of a deputy is imputed to the sheriff.

Wilfulness not being an element of §12886 GC, but the gist of a violation of that section being any unintentional failure to conform to a lawfully prescribed jail rule, a sheriff may violate that section by his own neglect or by the imputed neglect of a deputy.

It is recognized that public officers may be held criminally negligent for the wrongful acts of their subordinates. Thus in Larmore v. State, 24 A. 2d, 284, the Maryland Court of Appeals in 1942 upheld a conviction of county commissioners for "unlawfully and negligently" allowing, approving and passing for payment certain fictitious and fraudulent claims against the county.

The commissioners sought to excuse the passing of the fraudulent claims on the fact that it was done by their chief clerk on whom they of necessity placed great reliance in the performance of their duties. The Court rejected this excuse by saying, in effect, that the commissioners' statutory duties were non-delegable.

"It is understandable that officers provided with a clerk in whom they have confidence should leave much of the performance of their duties to her; but they cannot, except at their peril, leave to her duties which the statute commits to them."

And direct authority for applying §2831 GC to a criminal case against a sheriff is provided by State v. Wedin, 89 A., 753, which holds that a statute similar to §2831 GC makes a sheriff criminally liable for a deputy's neglect in permitting an escape from jail.

In Count One, the concluding statement charges that the defendant

"permitted one, George Gordon, to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M., on April 4, 1951."

This statement tells the manner in which the State claims that the defendant neglected to conform to a lawfully pre-scribed jail rule (the rule in question requires prisoners to be confined in their cells from 8:00 P. M., to 8:00 A. M.). It fixes the place. It pin points the time. It designates the specific offense.

It is therefore sufficient to charge that the defendant per-mitted George Gordon to leave the confines of his cell to use

the jail telephone at the designated time since the defendant would be liable, under §12886 GC (assuming it is proved that the jail rule was lawfully prescribed), if George Gordon was allowed out of the confined area of the jail, at the specified time, irrespective of whether he was allowed out by the defendant personally or by a deputy without the defendant's knowledge or consent.

Hence it is decided that the concluding statement of Count One states a violation of §12886 GC.

Count One, therefore, sufficiently notifies the defendant of an offense against §12886 GC. The demurrer is over-ruled as it pertains to Count One, and all similar counts (Counts 4, 7, 10, 13, 16, 19, 22, 25, 28, 31, 34, 37, 40, 43, 46, 49, 52, 55, 58, 61, 64, 67, 70).

Count Two (omitting formal allegations), states:

"Stuart Harland on or about the 4th day of April, 1951, at the county aforesaid, being sheriff of said county and having the care and custody of said county jail, did permit a prisoner to wit: one, George Gordon, to be dealt with less strictly than intended by his sentence, to wit: permitted said George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M. on April 4, 1951."

This count is drawn in the language of §12849 GC, which provides:

"Whoever, being a sheriff, jailer or other person having the care and custody of a jail, permits it to become foul or unclean so that the health of a prisoner may be endangered, or permits a prisoner to be dealt with less strictly than intended by his sentence, shall be fined not more than one hundred dollars."

It is manifest that the concluding statement of Count Two, which reads:

"to wit: permitted said George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M. on April 4, 1951,"
seeks to specify the manner in which it is claimed that "Stuart Harland * * * being sheriff of said county and having the care and custody of said county jail,"
"did permit a prisoner to wit: one, George Gordon to be dealt with less strictly than intended by his sentence."

On its face the statement that George Gordon (previously referred to as a prisoner) was beyond the confines of his cell, and used the jail telephone at 10:06 o'clock P. M., on April 4, 1951, describes treatment of a prisoner which is less strict than his sentence intended. A prisoner's sentence is to be served in jail and not outside of confinement.

It is charged that defendant permitted this condition. The verb "permit" is likewise employed in §12849 GC to describe the offense. If "permit" is used to describe the offense in the statute, then "permit" is sufficient to specify the nature of the offense charged in the indictment.

Furthermore, a person may permit a condition to exist by means of the act of another for which he is responsible, and intention on the part of the principal to permit the condition to exist is not essential to fix the principal's responsibility.

If a deputy permitted a prisoner to be treated less strictly than the sentence intended this would constitute either a neglect of duty or misconduct in office on the part of the deputy.

Under §2831 GC, discussed above, such a neglect of duty or misconduct in office is imputed to the sheriff.

Wilfulness not being essential to a violation of §12849 GC, a sheriff may violate the section either by his own act or by the imputed act of a deputy in permitting a prisoner to be treated less strictly than his sentence intended.

Since Wilfulness is not essential to charging a violation of §12849 GC, the concluding statement of Count Two is therefore adequate and the count is found to be sufficient.

The demurrer is over-ruled as it pertains to Count Two, and to all similar counts (Counts 2, 5, 8, 11, 14, 20, 23, 26, 29, 32, 35, 38, 41, 44, 47, 50, 53, 56, 59, 62, 65, 68, 71).

Count Three (omitting formal allegations), states:

"Stuart Harland on or about the 4th day of April, 1951, at the county aforesaid, being sheriff of said county did wilfully refuse or neglect to perform a lawful duty in a criminal case or proceeding, to wit: the case of the State of Ohio v. Joe Green aka George Gordon, in that said sheriff permitted said George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 o'clock P. M., on April 4, 1951."

This count is drawn in the language of §12850 GC, which provides:

"Whoever, being a clerk, sheriff, coroner, constable or other ministerial officer, wilfully refuses or neglects to perform any lawful duty in a criminal case or proceeding, or, being an officer, delays to serve a warrant legally issued and delivered to him when in his power so to do either alone or by calling assistance, if the offense charged be a felony, shall be fined not more than five hundred dollars or imprisoned not more than thirty days, or both; or, if the offense charged be a misdemeanor, shall be fined not more than one hundred dollars or imprisoned not more than twenty days, or both."

The concluding statement of Count three, which reads:

"to wit: the case of the State of Ohio v. Joe Green aka George Gordon, in that said sheriff permitted said George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 P. M., on April 4, 1951,"

attempts to specify the manner in which "Stuart Harland * * * being sheriff of said county

"did wilfully refuse or neglect to perform a lawful duty in a criminal case or proceeding."

**Sec. 12850 GC** expressly requires that the neglect be wilful. The word "Wilfull" or "wilfully" in statutes of this kind means, at least, intentional and by design. 43 Am. Jur. Public Officers, Section 329, P. 129. State v. Williams, 94 Vt. 423, 111 A. 701. Also, see **In re Sulzmann,** 29 N. P. (N. S.) 92, affd. **125 Oh St,** 394, which similarly defines "Wilfully neglects" as used in the Removal of Officers Statute (§10-1 GC).

A sheriff therefore, cannot unintentionally violate §12850 GC. He may violate it by personal conduct if he acts intentionally and by design. He may also violate it if he knowingly allows a deputy to fail to perform a lawful duty in a criminal case, or if he consents to such failure after it has occurred. But a sheriff cannot be criminally responsible for a neglect of a deputy in failing to perform a duty in a criminal case, if the sheriff did not approve of or consent to its occurrence.

To make a sheriff criminally responsible under §12850 GC for his unintentional acts would disregard the element of wilfulness which is expressly made an element of this crime.

The concluding statement of Count Three specifies the offense predicated on §12850 GC in these words:

"to wit: the case of the State of Ohio v. Joe Green aka George Gordon in that said sheriff permitted said George Gordon to go beyond the confines of his cell and use the jail telephone at 10:06 P. M. on April 4, 1951."

It is evident that this statement contains no express language which charges the defendant with acting intentionally. It does, however, charge that the defendant "permitted" George Gordon to go beyond the confines of his cell to use the telephone at the time designated.

In the ruling on the defendant's motion to quash service on the indictment it was concluded that the word "permitted" sufficiently charged an intentional act since the first significa-tion of the word "permit" implies that the mind has con-sented. 70 C. J. S., 566.

However, the word "permit" does not absolutely import an intentional conscious act. Thus the note in C. J. S. supra, says that in its second sense "permit"

"means negative action, something less than consent, implying no affirmative action and involving no intent but being mere passivity, abstaining from preventive action."

Wilfulness being an essential element of §12850 GC, the concluding statement of Count Three, which seeks to specify the offense, must unequivocally assert that the defendant acted intentionally and wilfully.

It is seen that the word "permit" **may** or **may not** imply consent and intention. To allege that a person permitted something to happen does not therefore unqualifiedly charge that the person acted intentionally and wilfully.

On further consideration of the meaning of the word "permit," and in view of the Yudick decision, the effect of which is to require the concluding statement of Count Three to contain facts which definitely charge the defendant with acting wilfully, it is determined that the absence therefrom of an unequivocal charge of wilfulness renders Count Three defective and insufficient.

Defendant's demurrer will therefore be sustained as to Count Three and all similar counts (Counts 3, 6, 9, 12, 15, 18, 21, 24, 27, 30, 33, 36, 39, 42, 45, 48, 51, 54, 57, 60, 63, 66, 69 and 72).

The other grounds of defendant's demurrer insofar as they apply to Counts One, and Two, were considered and over-ruled in connection with defendant's motion to quash service of the indictment. For the same reasons they are now denied.